Good morning, Your Honors. Steve Chang. May I please record Steve Chang on behalf of the petitioner, Mr. Seun Jeun. I would like to reserve two minutes for rebuttal. Before I start, I'd like to focus on this is a two petitions consolidated. I'd like to focus on the original petition 70191 and the motion to reconsider denial of petition 73094 will just submit to the court. Apparently, there was a case law. Naisaki published a case law after Rodriguez-Eachevera that an alien might not have a right to have a counsel before the initiation of removal proceeding, which is an issuance of MTA. So I just submit to the court on that issue on our petition, and I'd like to focus on the first petition itself. There are two main reasons why the petitions filed by Mr. Jeun should be granted. The first, Mr. Jeun argues that Mr. Jeun's due process right to have a full and fair hearing was violated when DHS reported to the aliens who Mr. Jeun allegedly smuggled in when DHS knew that the alien witness does have an exculpatory evidence without making a reasonable effort to secure the presence of the witness for the petitioner's hearing. In this case, there were three aliens who were allegedly smuggled in, and two female aliens gave a testimony saying that Mr. Jeun came to their hotel room, knocked the door, and brought those people down. There was a male alien witness who stated that the he met Mr. Jeun at the restaurant, as in happenstance. That male respondent's testimony would have incorporated Mr. Jeun's accounts of the events what led to the proceedings. By the government's bad act, by deporting those people, which they knew that they were not allowed in. You're telling me the government has to allow in people that don't have a basis for admission simply because someday in the future their testimony might prove useful to somebody? The focus is that the LPR, due process-wide, is implicated here. Can anything prevent your client from obtaining statements from them? No. We had no locations whatsoever. DHS never had any addresses. It was your client that was driving in a car and arrived at the border with these people. Your client had an opportunity to find out who they were. If he didn't avail himself of that opportunity, why is that the government's problem? Why do we have to let in three people that don't have a basis to be here, let them in and let them stay in this country for a period of time simply because your client might someday want to get in contact with them? Because that person, my client, has his due process right. His due process right is implicated. Did you ever inquire of the government of who the people were when they were turned away? Excuse me, sir? Did you inquire of the government who the people were that were in company with your client when they were turned away? Yes, Judge. During the initial proceeding down below, they had no information, no contact information regarding the three aliens' presence in overseas. But anyways, so there was a bad ---- But wasn't this problem solved when the panel of this Court remanded the case and said don't consider the I-213s for the three Koreans? That's correct, Judge. However, the issue here is it's not a admissibility of the hearsay statement itself. What we are saying is that government's bad act itself of deporting those people, so preventing my client ---- Don't say deport. They weren't deported. You've just acknowledged they were never admitted. So it's refusing to admit. I believe there was an issuance of the expedited removal order. Were they ever recognized as being admissible? No. So ---- I just want to make sure I understand. Your view of due process is that the government had an obligation to not only keep these people in the country who had no status, but presumably to keep them in custody at its expense so that your client could get to them if he needed them, which he never said he did? That's correct, Judge. The problem here is that my client was charged or alleged to be involved in alien smugglings, and his only way to defend that charge is by use of the alleged alien smuggled in. And by government's bad act. At the same time, government knew that there was conflicting testimonies between those two groups of aliens. There was a 2012, I believe, September, Ninth Circuit issued a published decision which was in criminal proceeding. It's U.S. v. Uridel Common, which Ninth Circuit chided DHS by deporting that alien who had an exculpatory evidence of curtailing that person's right to have a full and fair hearing. Even though there was a criminal proceeding, I believe the same logic should be applicable in this case. Government should not be allowed to do that. Is this argument you've presented to us previously? I don't recognize it. Is it in your brief anyplace? No. Actually, Judge, we did submit that. Where? When last July or last July, Ninth Circuit asked us to supplement any changes in the law that since this case has been such a long time, I don't see anything in your brief that talks about this. I don't see anything that suggests it's been exhausted to the agency. When was the first time this argument was raised? 2012. 2012. And in what form was it raised? It's a response to a government's order that we need to supplement any changes in the law. I don't see any reason to present the evidence or arguments which was not put forward because this case has been pending so long, which was – Judge, one second. But I just want to ask you, the argument you made was that the government acted in bad faith in not retaining these potential witnesses. That's in your papers? Yes, Judge. And Ninth Circuit specifically talked about that in 2012 case. Do you know which case that was? There are two. Yes, Judge. The case was U.S. versus – No, no, no. I'm asking where you advised this court of the argument. You said there are two numbers, there are two different cases before us. In what file was notification given to us of this argument? 09-70191. That's this appeal. Yes, Judge. I see nothing filed with this court between 2010 and 2013, looking at the docket sheet. I have no idea what you're referring to when you tell us the argument's been presented to us. Judge, actually, there was an order and government responded to our – Was this under Rule 28J, an intervening decision? Yes, Judge. It was lodged August 15, 2013. 2013? Yes. And government responded as well. And then this court said – On that date, I have in the docket entry something called motion to refer case to mediation. Yes, Judge. Inside of that motion itself, we talked about this case, Judge. Well, see, materials about mediation, and there's some references to materials given to the mediator, aren't given to the panel. So I confess I have no idea what you're talking about with regard to this argument. We'll take a look at the docket and see if there's something there, but that's not the way to bring up something new to the panel. Because we just replied to the Ninth Circuit's specific order to advise the court if there was any intervening or change in a law. And we responded by, you know, a form of a motion that yes, there was a change in a law. So either to remand the case back to the agency to consider that issue, or set it to the mediations. And our government opposed that mediation, and this case was never remanded back. Okay. We've taken your additional time, so we'll still give you the time requested for rebuttal. Yes, please. And I guess my time is up. Well, don't take more of it now. If you want your two minutes, you'd better sit down. May it please this Court. My name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. I'd like to briefly discuss the issues that counsel raised. Can you help us with where this bad faith argument appears? Yes. This Court routinely issues an order for cases that are pending, asking for updates. Immigration cases because of their age. Yes. As a result of that, Petitioner filed a motion to remand based on the cases he discussed. The government did, in fact, oppose the request for mediation, and there was no mediation. And so it would be in the cases cited were in the request for mediation. Whether you have that before you, I don't know. We don't, but the Court does. We'll find it. Okay. Is it your view that this issue is properly before the Court? No, it is not. This is an issue that absolutely could have been raised to the board and the immigration judge. Secondly, just a cursory discussion, relying on criminal cases is not really relevant because there are different due process protections for criminal versus civil cases. And as you have rightly pointed out, he's asking that the government detain at its own expense three aliens who potentially could be witnesses on the off chance that they corroborate his claim. As you pointed out, he made no attempt to get them. If they were so vital, there's no evidence that he did, in fact, try to get them. Turning to the issues that are, in fact, before this Court, this Court should affirm the decision of the board because the board correctly determined that DHS met its burden of establishing that Jun is removable as charged. The first main issue is the hearsay statements that Officer McGraw recounted in her testimony. As Judge Kogan rightly noted, the actual statements by the aliens were not considered by the board. It was only the testimony of Officer McGraw, and Jun did have the opportunity to cross-examine her and refute any testimony that she provided. What's the practical difference between keeping out the three witnesses, I-213s, and allowing McGraw to testify as to what they said to her? Is there a difference? There is a difference, Your Honor, primarily because McGraw was available for cross-examination. If there had been discrepancies or other infirmities of her testimony, Jun could have brought those to light, whereas with the affidavits, there would have been no chance to do so. Secondly, her testimony was, in fact, corroborated, or her recounting of the hearsay was corroborated by her own investigation. As she testified, she was able to find the passports hidden under the front passenger seat, or the front driver and passenger seats, yes. Again, and then his testimony did nothing to undermine her testimony. The testimony that he provided is, quite frankly, just a series of implausibilities after implausibilities, and nothing that he provided undermines her testimony. As a result, the Board correctly determined that DHS met its burden, and if there are no further questions, we rest on our briefs. Thank you, Your Honors.  We have two minutes for rebuttal. Thank you, Judge. Basically, in this case, the fundamental focus is what kind of due process right this person would have or entitled to. And if Mr. Jun was, let's say, a U.S. citizen, he would have been only referred to the criminal court proceeding, because a U.S. citizen is not subject to a civil proceeding of a removal proceeding. So government makes a difference. Well, they could pick and choose which proceeding that Mr. Jun would face into. If it was a removal proceeding, then somehow his due process right would be limited. If he was a U.S. citizen, by the way, he would only be referred to the criminal proceeding. And you're saying that the government would definitely have prosecuted him if he had been a U.S. citizen? Why not? Why not? Do you want them to prosecute him? I mean, they could. Maybe the statute of limitations is run, but are you encouraging prosecution of your client? If he was prosecuted in the criminal proceeding, his case would have been dismissed. But the rights depend on the amount of process that the government uses. And they have not prosecuted him, and you don't know that they would prosecute him if he was a U.S. citizen. Well, have they prosecuted him in the criminal proceeding, his case would have been dismissed. Well, I mean, the U.S. v. Common case. True. And so government would have an untouched discretion where to put this person in, even though the action itself was the same action, he would face a totally different fate on his case. If he was a U.S. citizen, his case would have been dismissed. Well, he would have had a different fate because he would have been a U.S. citizen. If somebody foreign, somebody not a citizen had been charged criminally, they would have had the due process rights perhaps that you allege, but they'd still be subject to deportation because the rules are different with regard to criminal prosecution and immigration. For example, the standard rules of evidence, Federal rules of evidence, don't pertain to immigration proceedings. That's a difference. Why isn't this subject to the same kind of difference? The due process right does not distinguish U.S. citizen to LPR. Due process speaks to the in-person judge. Thank you, Judge. We have your argument. We thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Cogan, Schroeder, Clifton